UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X

WILLIAM MARTINEZ,

                         Petitioner,

         -against-

WILLIAM BROWN, Superintendent, Eastern
Correctional Facility,

                         Respondent.

-------------------------------------------------------------- X

**NOT FOR PUBLICATION**

**MEMORANDUM DECISION AND ORDER**

05 Civ. 4464 (BMC)

BROOKLYN OFFICE

**COGAN**, District Judge.

     I assume familiarity with the facts underlying this petition for a writ of *habeas corpus* under 28 U.S.C. §2254. I note at the outset that the petition does not state any claim for relief. It appears that petitioner used an on-line petition form and after completing it, accidentally deleted the section allowing for the insertion of federal grounds, although he completed the section on grounds raised in state court. Nevertheless, since petitioner is *pro se*, and has filed a reply brief that gives some amplification of his claims, I will construe it liberally as raising the three claims that he raised in State Court, two of which are referenced in his reply brief. This seems appropriate since respondent has addressed each of these claims.

     So construed, the petition raises three points for review: (1) petitioner's sentence was excessive because he received twenty years instead of the ten years which he could have received pursuant to a plea bargain had he pled guilty; (2) he was denied due process as a result of several instances of prosecutorial misconduct; and (3) the evidence was insufficient to convict or the verdict was against the weight of the evidence.

## I. Excessive Sentence

Respondent argues that this claim is procedurally barred because in State Court, petitioner challenged his sentence solely as a matter of discretion and did not invoke any federal constitutional provision. Petitioner responds that in his Appellate Division brief, he cited Weems v. U.S., 217 U.S. 349, 30 S.Ct. 544 (1910), which he contends is sufficient to preserve his Eighth Amendment claim.

A review of the brief point from petitioner's Appellate Division brief leaves no doubt that it was based solely on state law, appealing to the Appellate Division's discretion to reduce his sentence. Petitioner's brief refers to neither the Eighth Amendment nor the U.S. Constitution. Weems is cited in passing, not discussed, only for the principle that punishment should be graduated and proportional to the offense, which fit into petitioner's extensive discussion of state law cases applying the Appellate Division's sentencing discretion. There was nothing in his brief to alert the Appellate Division that petitioner was raising a federal constitutional claim. See St. Helen v. Senkowski, 374 F.3d 181, 183 (2d Cir. 2004).

This means that the claim is unexhausted, but, since petitioner's federal constitutional claim could have been raised on his appeal but was not, it is now deemed exhausted but procedurally barred under New York law. See People v. Harris, 109 A.D.2d 351, 491 N.Y.S.2d 678, 687 & n. 3 (2d Dep't 1985); N.Y.Crim. P.L. § 440.10(2)(c). Petitioner has not attempted to demonstrate cause or prejudice in connection with his failure to raise a federal constitutional claim.

In any event, even if I characterized petitioner's claim as raising a federal constitutional issue, the Appellate Division rejected this claim on the merits, holding that

2

"[t]he sentence imposed was not excessive." People v. Martinez, 11 A.D.3d 713, 714, 784 N.Y.S.2d 568, (1st Dep't), leave to app. den., 4 N.Y.3d 746, 824 N.E.2d 59, 790 N.Y.S.2d 658 (2004).

Petitioner argues that he also challenged his conviction on "vindictiveness" grounds, and since the Appellate Division did not mention that, it did not rule on vindictiveness. This is incorrect. The Appellate Division stated that petitioner's "remaining contentions either are unpreserved for appellate review or without merit." This constitutes a ruling on the merits on both points relating to petitioner's sentence. See Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006). That means that, were I to review the claim on the merits, I would apply the deferential standard of 28 U.S.C. §2254(d). Under that provision, petitioner's claim could be sustained only if I found that the Appellate Division decision was contrary to or an unreasonable application of federal law as determined by the Supreme Court. See Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000).

A defendant has to expect that if he rejects an offered plea bargain, proceeds to trial, and is convicted, his sentence may exceed that which he could have received in the plea bargain. Petitioner does not allege any facts demonstrating vindictiveness, and a twenty year sentence for manslaughter is not excessive under the Constitution. Federal case law has uniformly rejected far more severe sentences than the one plaintiff challenges here. See Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166 (2003). Therefore, even viewing the Appellate Division decision as turning on federal law, it did not unreasonably apply any Supreme Court decision.

## II. Prosecutorial Misconduct

The Appellate Division also disposed of this claim as "either ... unpreserved for appellate review or without merit," and thus it is presumed to be on the merits, see Jiminez v. Walker, 458 F.2d 130 (2d Cir. 2006), calling for deferential review. See 28 U.S.C. §2254(d); Williams v. Taylor, supra.

To warrant granting habeas corpus relief, the prosecutorial misconduct alleged must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868 (1974)). Petitioner cannot meet this standard here. First, the evidence against him was overwhelming – two eyewitnesses, one of whom was disinterested, testified that they saw him stab the victim, and the police obtained a full confession after Miranda warnings that matched the witnesses' testimony in essential details. Petitioner's case consisted of calling his girlfriend as a character witness and testifying that the police beat a false confession out of him, which testimony the jury rejected. Moreover, none of the prosecutorial acts about which petitioner complains, either singly or collectively, rise to the level of a denial of due process.

### A. Improper Reference to Alias

First, petitioner alleges that the prosecutor asked one witness, "do you know anyone who goes by the name of 'El Mafioso?'," and that even though the trial judge sustained an objection, the jury could figure out by process of eliminating aliases identified for others referred to during the trial that "El Mafioso" referred to petitioner. Petitioner does not contend that this single disallowed question can constitute a due

4

process violation. He argues instead that because the trial judge identified the aliases that could be used to describe petitioner at a Sandoval hearing, and "El Mafioso" was not one of the allowed aliases, the prosecutor's question shows a deliberate violation of the Court's ruling.

However, petitioner has mischaracterized what happened at the Sandoval hearing. The prosecutor raised the issue of introducing aliases if petitioner chose to testify because she wanted leave to show that petitioner had used false names in prior arrests. This was a credibility challenge to show a practice of deception. The usual Sandoval hearing involves using evidence of the crimes charged in prior arrests themselves; as petitioner's trial counsel noted more than once, the prosecutor's request to use the aliases "is a very unusual Sandoval application." The trial judge granted the application to use the aliases that petitioner had used on his prior arrests, but never precluded the prosecutor from referring to "El Mafioso." Petitioner had never used that alias when previously arrested, and thus the alias never came up at the Sandoval hearing. In fact, in the lengthy sidebar that followed defense counsel's objection to the "El Mafioso" question at trial – which objection was only on the grounds that the name itself was unduly prejudicial – neither side nor the trial judge mentioned the Sandoval hearing.

Thus, the prosecutor did not violate a pretrial ruling. For some reason, Respondent does not seem to have appreciated petitioner's distortion of the record, as the State did not call it to the Appellate Division's attention, and did not point it out here.

### B. Improper Testimony of Aviles

Petitioner next complains that the prosecutor elicited improper testimony from a witness, Aviles, after proffering to the trial judge that Aviles would testify to an

5

admission by petitioner. This point is without merit, and much like the "El Mafioso" matter, appears to be based on a mischaracterization of the record that Respondent did not fully address in the Appellate Division or in this proceeding.

The prosecutor proffered that a friend of petitioner, Aviles, would testify as to a statement petitioner made a few weeks after the crime. Aviles was going to testify that he, petitioner, and the other friend who was with them at the time of the killing, Chuy, were talking about whether they should leave the jurisdiction. The proffer consisted of two points that petitioner said to Aviles during this conversation: (1) he, petitioner, could not leave the jurisdiction first because the authorities would then think he committed the killing; and (2) petitioner said "they [the authorities] don't have any evidence against me." The prosecutor represented that Aviles had ascribed this statement to petitioner in conversations with detectives and confirmed it to her in her office, and that she had disclosed the detectives' notes to defense counsel as <u>Rosario</u> material.

The trial judge agreed to allow the testimony. Upon testifying, the witness confirmed the first part of petitioner's statement – that petitioner said he would not leave the jurisdiction first because the authorities would then think that he did the killing, but as to the second part, instead testified that petitioner had said "if the people were accusing him of this, that they needed to prove it .... They needed proof to show he had done something."

Before I describe what happened thereafter, I note that the actual testimony up to this point does not seem so different than the proffer. Considering that Aviles' testimony at trial was translated from Spanish by an interpreter; that he was a friend of petitioner; and that he was relaying a conversation that happened two years before his testimony, the

6

difference between "they don't have any evidence against me" and the State "needed to prove it ... . They needed proof to show I had done something," strikes me as more of form than substance. It also seems to me an admission for evidentiary purposes, with the jury left to determine what weight to give it.

The trial judge, however, did not see it that way. He found that the testimony did not conform to the proffer, and that it did not constitute an admission. He therefore gave the prosecutor the chance to elicit the testimony again and see if the witness would testify closer to the proffer. At that point, Aviles went South on the prosecutor. He adhered to his testimony on the first part of petitioner's statement, but as to the second part, he described petitioner's statement as "if people were saying he had done something, they had to prove it to him. Because there was no proof, *because he hasn't done anything.*" (Emphasis added).

The prosecutor expressed her distress at the witness' turnabout and requested permission to treat him as hostile, confronting him with his prior statements to the detectives and to her. The trial judge rejected her request, and sustained defense counsel's motion to strike the testimony, instructing the jury to disregard it.

As is evident from this description of the events, there is no constitutional violation here. There is no prosecutorial misconduct, just a witness who turned on the prosecutor. There is no prejudice, because no unfairly incriminating evidence was adduced. Indeed, if anything, Aviles' actual trial testimony was arguably exculpatory.

7

## C. Circumstances of the Arrest

Petitioner was arrested when found hiding in a closet at his girlfriend's house while his girlfriend was present. At the <u>Sandoval</u> hearing, the prosecutor sought leave to cross-examine petitioner about these circumstances if he chose to testify in order to show knowledge of guilt. Petitioner's story at the <u>Sandoval</u> hearing was that he hid in the closet because he was "unsure" of his immigration status, and feared any contact with the authorities. The trial judge ruled that on cross-examination, the prosecutor could not inquire into his immigration status, and could not inquire into the circumstances of his arrest because, although he did not state this, to allow the latter might compel petitioner to admit the former, and the jury might then hold his immigration status against him: "[T]he defendant may not be cross-examined about whether or not he is an illegal alien. There may be no cross-examination about whether or not the defendant was arrested hiding in a closet or any of the other circumstances concerning his arrest."

At trial, the prosecutor did not cross-examine petitioner on these points. However, the defense called petitioner's girlfriend to testify as a character witness. She testified that petitioner was a hard-working family man who had a reputation for peacefulness in the community. The prosecutor effectively cross-examined her by pointing out that the girlfriend had no knowledge that he associated with Aviles and Chuy; in fact, she did not even know who they were, even though they were petitioner's good friends. The prosecutor then asked two questions that formed the basis of petitioner's misconduct claim here: "Wasn't your husband or boyfriend, William Martinez, hiding in the closet in the house on August 8, 2000?" and "Would your reputation [sic: should be "opinion"] change if you were to find out that he was a member

8

of a gang?" Petitioner claims here that these two questions, both of which resulted in sustained objections, violated the Sandoval ruling.

The Sandoval ruling only concerned cross-examination of petitioner. It did not at all foretell what the prosecutor would be allowed to ask some other, previously unidentified character witness. The prosecutor's position was that by calling the girlfriend as a character witness, the defense opened the door to her knowledge or lack of knowledge of facts that would undermine her testimony. The facts concerning petitioner's hiding in the closet were undisputed, and the prosecutor represented to the Court that she had a good faith basis for the gang question.

The prosecutor might have exercised better discretion in fronting these issues for the trial judge before she asked them. The trial judge was quite clearly annoyed, whether it violated the Sandoval ruling or not, that she had come close to violating his expectation that petitioner's immigration status would not have to be disclosed, as he felt that by raising the hiding-in-the-closet issue, petitioner might be compelled to discuss his immigration status to explain it. Nevertheless, the questions did not violate any court order or petitioner's due process rights. There was no prejudice, both because the questions were immediately stricken, and because the evidence of guilt was so substantial.

### D. *Improper Closing*

Typically, "[r]emarks of the prosecutor in summation do not amount to a denial of due process unless they constitute egregious misconduct." United States v. Elias, 285 F.3d 183, 190 (2d Cir.2002) (quoting United States v. Shareef, 190 F.3d 71, 78 (2d Cir.1999) (internal quotation marks omitted)). "The standard for evaluating whether

prosecutorial misconduct constitutes constitutional error is whether the "remarks were so prejudicial that they rendered the trial in question fundamentally unfair." Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir.1990) (quoting Garofolo v. Coomb, 804 F.2d 201, 206 (2d Cir.1986)). The fairness of the trial is evaluated under the "totality of the circumstances." Floyd, 907 F.2d at 353. "The severity of the misconduct, curative measures, and the certainty of conviction absent the misconduct are all relevant to the inquiry." United States v. McCarthy, 54 F.3d 51, 55 (2d Cir.1995) (internal quotation marks omitted).

The specific remarks about which petitioner complains were the prosecutor's statements that the jury should find the eyewitnesses credible because, despite their apprehension about coming to court (to which they had testified), they nevertheless had the courage to come forward. No objection was made other than that the prosecutor had mischaracterized one of the witnesses' testimony concerning his fear, and the trial judge overruled it, advising the jury that their recollection of the testimony would control. In his Appellate Division brief, petitioner cited no case, state or federal, to show any impropriety in this statement, and he cites none in this case. I similarly can find no Supreme Court authority that the Appellate Division unreasonably applied in rejecting this claim.

### III. Insufficient Evidence and Verdict Against the Weight of the Evidence

Although nothing in petitioner's original petition or reply brief suggests he is pursuing this claim, respondent has assumed that he is because he raised it in State Court. I will make the same assumption, and reject that claim. The "relevant question," of course, "is whether, after viewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979). As noted above, two witnesses in close proximity to the events positively identified petitioner, and he confessed both orally and in writing. This is sufficient for constitutional purposes under Jackson (which, again, petitioner cited neither to this Court nor the Appellate Division).

## CONCLUSION

The petition is denied. The Clerk is directed to enter judgment in favor of respondent. Petitioner has failed to make a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability shall not issue. 28 U.S.C. §2253(b)(2).

**SO ORDERED.**

/S/
U.S.D.J.

Dated: Brooklyn, New York
August 16, 2007